UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA L., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 22 CV 554 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donna L. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion for summary judgment [11] is denied, defendant's motion for summary judgment [16] is granted, and the denial of benefits is affirmed.[1]

**Background**

In May 2019, plaintiff applied for a period of disability and disability insurance benefits, alleging that she became disabled on June 30, 2015. [10-1] 16. The claim was denied initially, on reconsideration, and after a hearing with an administrative law judge (ALJ). [*Id.*]. The Appeals Council denied review in January 2022, *see* [*id.*] 1-7, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claims in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one, the ALJ found that plaintiff did not engage in substantial gainful activity between the alleged onset date and plaintiff's date last insured. [10-1] 19. At step two, the ALJ determined that plaintiff suffered from one severe impairment–adrenal insufficiency–and that plaintiff's chronic fatigue syndrome (CFS) was not a medically determinable

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [10-1], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [5, 8].

impairment (MDI). [*Id.*] 19-21. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal a listed impairment. [*Id.*] 21-22. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work, except that she could not climb ladders, ropes, or scaffolds; could only frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and must avoid unprotected heights and moving dangerous machinery. [*Id.*] 22-25. At step four, the ALJ held that plaintiff could perform her past relevant work as a benefits clerk II. [*Id.*] 26. Although that ruling meant that plaintiff was not disabled, the ALJ continued to step five and found that jobs existed in significant numbers in the national economy that plaintiff could perform: addressor (2,700 jobs), document preparer (18,900 jobs), and table worker (1,000 jobs).

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the case should be remanded because the ALJ erred in (1) finding that her chronic fatigue syndrome was not a medically determinable impairment; (2) discounting her subjective symptom allegations; and (3) weighing the opinion evidence.

### A. Chronic Fatigue Syndrome

Chronic fatigue syndrome is a "systemic disorder consisting of a complex of symptoms that may vary in frequency, duration, and severity but generally causes prolonged fatigue lasting six months or more[.]" *Riedel v. Kijakazi*, Case No. 20-CV-1361, 2022 WL 613298, at *2 (E.D. Wis. Mar. 2, 2022). It entails "fatigue that is of new or definite onset, is not caused by other disorders or ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities." *Mark S. v. Saul*, Case No. 18 CV 50276, 2020 WL 1042045, at *3 (N.D. Ill. Mar. 4, 2020). An ALJ must evaluate a claimant's chronic fatigue syndrome in accordance with SSR 14-1p, which provides that "a physician's diagnosis of CFS alone is not enough to establish that

2

CFS is a medically determinable impairment." *Id*. Rather, a CFS diagnosis must also be accompanied by medical signs, such as palpably swollen or tender lymph nodes on physical examination; nonexudative pharyngitis; persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; frequent viral infections with prolonged recovery; sinusitis; ataxia; extreme pallor; or pronounced weight changes. SSR 14-1, 2014 WL 1371245, at *2, 4. "There are also certain laboratory signs that establish the existence of CFS, including certain elevated antibody titers and abnormal MRI brain scans." *Mark S.*, 2020 WL 1042045, at *3. A physician can diagnose a claimant with CFS based on "a person's reported symptoms alone after ruling out other possible causes for the person's symptoms." SSR 14-1, 2014 WL 1371245, at *3.

In this case, the ALJ found that plaintiff's CFS was not a medically determinable impairment because (1) plaintiff's providers and the medical record did not exclude other possible causes of CFS, such as sleep apnea, plaintiff's admitted adrenal insufficiency, or a psychological cause, *see* [10-1] 20; (2) plaintiff's reported symptoms did not cause a substantial reduction in her employment, educational, or social activities, *see* [*id*.]; (3) plaintiff never presented with any of the medical signs of CFS that are specifically enumerated in SSR 14-1p, *see* [*id*.] 21; and (4) there was otherwise "very little in the way of evaluation with acceptable medical evidence to investigate the claimant's subjective complaints." [10-1] 20, 21. All of this provided a substantial evidentiary basis for the ALJ's decision that plaintiff's CFS was not a medically determinable impairment. *See Mark S.*, 2020 WL 1042045, at *3-4, *7 (affirming denial of benefits where plaintiff's treater did not rule out other causes of plaintiff's fatigue before diagnosing him with CFS and where plaintiff offered no objective medical signs or laboratory findings indicative of CFS).

Plaintiff's contrary arguments lack merit. Plaintiff contends that her treaters properly diagnosed her with CFS after ruling out other possible causes of her chronic fatigue. *See* [11] 6-7. But the record provides no support for this claim. Most importantly, it is undisputed that plaintiff never underwent a sleep study (despite her frequent complaints about disturbed sleep, *see* [10-1] 20) and was never evaluated by an endocrinologist (despite her primary care provider, Dr. Edelberg, having opined in 2014 that her fatigue was attributable to her adrenal insufficiency, *see* [*id*.] 20, 23-24, 699). It is likewise undisputed that plaintiff never underwent a neurological, psychological, or psychiatric evaluation, notwithstanding her alleged dizziness, cognitive difficulties, and headaches. *See* [*id*.] 20, 24. Plaintiff contends that the ALJ's reliance on these gaps in the record was nothing more than the ALJ "donn[ing] her own stethoscope and speculat[ing] about all the possible medical and psychiatric testing that should be pursued[.]" [11] 7. But it was hardly speculative for the ALJ to point out that plaintiff had not undergone further evaluations that were directly related to the symptoms she associated with her CFS.[3] Plaintiff also contends that

---

[3] Plaintiff's claim that the ALJ's duty to build a full and fair record required the ALJ to solicit medical evidence on these issues, *see* [11] 7, has no merit. It was plaintiff's burden to prove

3

"[n]umerous tests have been performed, including a tilt table study, a brain MRI, chest x-ray, an echocardiogram, and a complete battery of food sensitivity tests." [11] 6. As the Commissioner observes, however, neither plaintiff nor her treaters have explained what conditions or disorders these tests excluded–let alone that they excluded sleep apnea, adrenal insufficiency, or a mental or psychological cause of her symptoms. Finally, the fact that another treater, Dr. Donigan, "confirmed" that plaintiff had CFS does not undermine the ALJ's decision because a diagnosis alone– particularly one like Dr. Donigan's, which did not explain how (or whether) other causes of plaintiff's fatigue had been excluded, *see* [10-1] 619–cannot establish the existence of CFS. *See* SSR 14-1p, 2014 WL 1371245, at *3.[4]

Plaintiff faults the ALJ for relying on the fact that she never presented with any of the objective signs of CFS that are enumerated in SSR 14-1p. *See* [11] 8-9. Here plaintiff emphasizes language from SSR 14-1p stating that, "[b]ecause of the ongoing research into the etiology and manifestations of CFS, the medical criteria discussed above are only examples of physical and mental signs and laboratory findings that can help us establish the existence of an MDI." SSR 14-1, 2014 WL 1371245, at *5. Even accepting that SSR 14-1p's list of signs and findings is non-exclusive, it is obviously relevant to whether plaintiff's CFS was a medically determinable impairment that plaintiff never presented with *any* of those signs or findings. *Accord Mark S.*, 2020 WL 1042045, at *3 (affirming ALJ's ruling that claimant's CFS was not a medically determinable impairment where "[p]laintiff has failed to put forth any objective evidence to satisfy this explicit requirement for medical signs or laboratory symptoms"). What's more, plaintiff's brief does not identify which unenumerated signs or laboratory findings of CFS she exhibited that the ALJ should have considered.

For these reasons, the Court finds that substantial evidence supports the ALJ's finding that plaintiff's CFS was not a medically determinable impairment.

## B. Subjective Symptom Allegations

Plaintiff argues that the ALJ erred by concluding that she had exaggerated her symptoms.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, No. 19 C 1980, 2020 WL

---

at step two that her chronic fatigue syndrome was a medically determinable impairment. *See* 20 C.F.R. §§ 404.1512 & 404.1521.

[4] This observation applies equally to the note from an unnamed doctor who told another doctor that he had "exhausted everything" but also thought that plaintiff might be suffering from Lyme disease. *See* [10-1] 607.

6134986, at *6 (N.D. Ill. Oct. 19, 2020). "[T]he ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "[F]laws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original). The Seventh Circuit has stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

Plaintiff has not shown that the ALJ's subjective symptom analysis was patently erroneous. First, the ALJ permissibly concluded that plaintiff's allegations were inconsistent with the objective medical evidence, including the normal results of her physical examinations and the absence of any objective signs or laboratory findings indicative of CFS. *See* [10-1] 24; *see also Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021). Second, the ALJ reasonably found that plaintiff's allegations of disabling symptoms were inconsistent with her activities of daily living, which included her reported "independence with all activities of daily living" in 2019 and her ability to cook, clean, do yoga and Pilates, and spend time outside. [10-1] 23; *see also* [*id.*] 464, 607, 640. Contrary to plaintiff's argument, nothing in the ALJ's analysis suggests that she impermissibly equated plaintiff's ability to perform certain ADLs with the ability to engage in full-time work. Third, the ALJ permissibly noted that plaintiff, despite claiming to experience dizziness, headaches, and cognitive issues, never sought treatment from a psychologist, psychiatrist, or neurologist. *See* [*id.*] 24; *see also Martin D. v. Kijakazi*, Case No. 22 C 5168, 2023 WL 8601522, at *3 n.2 (N.D. Ill. Dec. 12, 2023) (ALJ may consider frequency or extent of treatment sought in weighing subjective symptom allegations). Not only was there an obvious relationship between plaintiff's reported symptoms and the kinds of treatment she did not pursue, but SSR 14-1p required evidence that plaintiff and her treaters had ruled out other causes–including mental causes–of her fatigue. Plaintiff's failure to pursue this treatment was thus a fair area of inquiry. Finally, the fact that plaintiff had not been hospitalized or undergone any medication trials to treat her symptoms sheds some light on the credibility of her allegations. *See Suzanne M. v. Comm'r of Soc. Sec.*, Case No. 1:17-cv-1425-JES-JEH, 2018 WL 6817029, at *8 (C.D. Ill. Nov. 29, 2018) ("The fact that Suzanne did not have documented hospitalizations, ER visits, or frequent visits with medical specialists shed light on the frequency and intensity of Suzanne's pain and other symptoms and also on the measures she used to relieve her pain and other symptoms.").

For these reasons, the Court finds that the ALJ's subjective symptom determination was not patently erroneous.

### C. Opinion Evidence

Plaintiff contends that the ALJ erred by giving more weight to the opinion of the testifying medical expert, Dr. Anigbogu, than the opinion of her primary care doctor, Dr. Edelberg. [11] 12-13. She also argues that the ALJ erred by rejecting without explanation a state consultative examiner's supposed "endorsement of a diagnosis of CFS." [*Id.*] 12.

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id.*

Here, the ALJ permissibly concluded that Dr. Edelberg's opinion that plaintiff's CFS caused disabling physical and mental work-related restrictions, *see* [10-1] 559-63, was unpersuasive. As the ALJ explained, *see* [*id.*] 25, Edelberg's opinion was inconsistent with plaintiff's normal presentation during the September 2019 consultative examination, where she demonstrated full motor strength and full range of motion in all joints and showed no difficulty standing, bending, squatting, lifting, or walking, *see* [*id.*] 463-70. Furthermore, Dr. Edelberg's diagnosis of CFS was inconsistent not only with the undisputed fact that other conditions–including sleep apnea and adrenal insufficiency–had not been excluded as the cause of plaintiff's fatigue, but also with Edelberg's own treatment note attributing her fatigue to adrenal insufficiency. *See* [*id.*] 699 (stating that plaintiff had been treated for "episodes of severe exhaustions triggered by physiologic adrenal insufficiency"). Finally, the ALJ reasonably concluded that Edelberg's opinion was not supported by any objective findings indicative of CFS and was thus based largely or entirely on plaintiff's subjective statements. *See* [*id.*] 25.

Substantial evidence likewise supported the ALJ's decision to credit Dr. Angibogu's opinion that plaintiff's CFS was not a medically determinable impairment. As the ALJ explained, Dr. Anigbogu had reviewed the entire record and found that plaintiff had normal physical examinations, *see* [10-1] 44; emphasized that her treaters had not ruled out sleep apnea or adrenal insufficiency as the cause of her fatigue, *see* [*id.*] 44-45, 46; and testified that there was nothing other than "subjective complaints" to support a CFS diagnosis, *see* [*id.*] 44. Plaintiff suggests that the ALJ

6

should have rejected Angibogu's opinion because the doctor was unfamiliar with SSR 14-1p. *See* [11] 12-13. Not only is that argument an improper invitation to reweigh the evidence, but it also ignores the fact that Dr. Angibogu's reasons for concluding that plaintiff's CFS was not a medically determinable impairment–the lack of objective findings, the failure to exclude other likely possible causes–were completely consistent with the criteria in SSR 14-1p.

Finally, there is no merit to plaintiff's claim that the ALJ improperly rejected the consultative examiner Julia Kogan's "diagnostic impression" of CFS. *See* [10-1] 463-70. Dr. Kogan did not purport to rule out other causes of plaintiff's fatigue, and, to the extent that she diagnosed CFS, she admitted that she relied on plaintiff's subjective reports and had not reviewed any of plaintiff's medical records. [*Id.*] 463. Contrary to plaintiff's argument, *see* [11] 12, the ALJ's citation of these deficits in the opinion was a "cogent explanation" for the ALJ's finding that plaintiff' CFS was not a medically determinable impairment. [10-1] 24.

## Conclusion

Plaintiff's motion for summary judgment [11] is denied, defendant's motion for summary judgment [16] is granted, and the decision denying the application for benefits is affirmed

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: January 3, 2025**